## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| ANGELO KEITH CLARK, | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-13-2673 |
| | § | |
| WILLIAM STEPHENS, | § | |
| | § | |
| *Respondent*. | § | |

### MEMORANDUM OPINION AND ORDER

Petitioner Angelo Keith Clark, a state inmate proceeding *pro se*, filed this section 2254 habeas petition challenging his conviction and twenty-five year sentence for possession of a controlled substance. Respondent filed a motion for summary judgment based on expiration of limitations (Docket Entry No. 12), to which petitioner filed a response (Docket Entry No. 13).

Based on careful consideration of the pleadings, the motion, the response, the record, and the applicable law, the Court GRANTS the motion for summary judgment and DISMISSES this case for the reasons that follow.

### *Procedural Background and Claims*

Petitioner was convicted of possession of a controlled substance and sentenced to twenty-five years incarceration in Harris County, Texas, in October 2009. The conviction was affirmed on appeal, and petitioner did not seek discretionary review. *Clark v. State*, No.

14-09-00944-CR, slip op. (Tex. App. – Houston [14th Dist.] 2010, no pet.). Petitioner's first application for state habeas relief was filed with the trial court on March 25, 2012, and denied by the Texas Court of Criminal Appeals on April 17, 2013. *Ex parte Clark*, WR-24,404-06, at cover. A second application for state habeas relief was filed with the trial court on April 27, 2013, and denied by the Texas Court of Criminal Appeals on August 21, 2013. *Ex parte Clark*, WR-24,404-07, at cover.

Petitioner filed the instant federal habeas case on September 10, 2013, raising claims for prosecutorial misconduct and ineffective assistance of trial and appellate counsel. Respondent argues that the claims are barred by the one year federal statute of limitations.

### *Limitations*

This pending petition is governed by provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under AEDPA, federal habeas petitions are subject to a one-year limitations period found in 28 U.S.C. § 2244(d), which provides as follows:

(d)(1)  A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

   (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

   (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)     The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. §§ 2244(d)(l)–(2).

Petitioner's conviction became final for purposes of AEDPA on December 18, 2010, when the time for filing a petition for discretionary review expired. *See Roberts v. Cockrell*, 319 F.3d 690, 693–95 (5th Cir. 2003). Thus, the federal limitation expired one year later, on or about December 18, 2011. Petitioner's applications for state habeas relief, filed in 2012 and 2013, were filed after expiration of limitations and afforded petitioner no tolling benefit. *See Medley v. Thaler*, 660 F.3d 833, 834-35 (5th Cir. 2011); *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000). The petition appears barred by the one-year federal limitation.

In his response to the motion for summary judgment, petitioner argues that he is not barred by limitations because unconstitutional state action impeded his ability to file his federal petition in a timely manner, and he is entitled to equitable tolling. In support, petitioner argues that his appellate counsel failed to comply with Rule 48.4, Texas Rules of Appellate Procedure, in that counsel did not send petitioner a copy of the opinion within five

3

days after it was issued.  Petitioner states that not until March 8, 2012, did he discover that his appeal had been denied in December of 2010, at which point he pursued state habeas relief.

The state court record shows that, in his first application for state habeas relief, petitioner complained that appellate counsel failed to notify him that his direct appeal had been denied.  In response, appellate counsel filed an affidavit in which he testified as follows:

> On November 6, 2009, I mailed [petitioner] a letter informing him that I had been appointed to his appeal.  At that time [petitioner] was in the Harris County Jail.  I never heard from him.
>
> On May 21, 2010, the State Bar of Texas received a grievance from [petitioner] alleging that he had written me and I had failed to respond. However, I never received any letters from him.  In his grievance [petitioner] listed my address, zip code and telephone number incorrectly. If [petitioner] ever sent me any correspondence it probably went to an erroneous address or was undeliverable.  The brief was filed June 1, 2010, in the Court of Appeals, 14th Judicial District.
>
> The Court of Appeals held there was no error in [the] judgment and affirmed the case on November 18, 2010.  I notified [petitioner] of the court's decision on November 22, 2010.  I have attached the letter to this affidavit.  I informed [petitioner] he had lost his appeal and that I would not be filing a PDR in his case.  I informed him how to proceed if he wished to continue.  I informed him of the deadlines involved and even included a Motion for Time Extension to file the PDR.
>
> [Petitioner] never informed me if he wished to proceed with a *pro se* PDR.  In fact I have never heard from [petitioner] concerning the outcome of his appeal. I never formally withdrew from representation after filing my brief. [Petitioner's] assertions are without merit.

*Ex parte Clark*, WR-24,404-06, pp. 29–30 (parenthetical omitted).

4

In denying petitioner's claim of ineffective assistance of appellate counsel, the trial court made the following findings of fact and conclusions of law on collateral review:

9.  According to the credible affidavit of [appellate counsel], on November 22, 2010, counsel sent written notification to the applicant of the appellate court's decision affirming his conviction; that counsel would not be filing a PDR in the primary case; instructing the applicant about how to proceed if he wished to continue his appeal; and informed the applicant of the deadlines involved.

10. According to the credible affidavit of [appellate counsel], counsel's written notification to the applicant on November 22, 2010, included a motion for an extension of time to file a PDR.

11. According to the credible affidavit of [appellate counsel], the applicant never informed counsel that he wished to proceed with a *pro se* PDR, and counsel has never heard from the applicant concerning the outcome of his appeal.

12. The applicant fails to demonstrate that counsel failed to notify him that his conviction in the primary case had been affirmed and that he was entitled to file a *pro se* PDR.

*Id*., pp. 37–38 (citations omitted).   The Texas Court of Criminal Appeals relied on these findings and conclusions in denying habeas relief.  *Id.*, at cover.

As shown by these findings and conclusions, the state trial court held as credible appellate counsel's affidavit testimony that he notified petitioner of the appellate court's decision on November 22, 2010, which was within five days after the appellate court's decision.  The trial court rejected petitioner's claim that appellate counsel failed to notify him of the decision or of the deadlines and procedures for filing a *pro se* PDR.  Although petitioner argues that counsel's letter of November 22, 2010, reflects his use of an incorrect

5

inmate number and zip code, the trial court was in possession of the letter and other related documents, and found that petitioner failed to demonstrate that appellate counsel "failed to notify him that his conviction in the primary case had been affirmed and that he was entitled to file a *pro se* PDR."  Petitioner does not meet his burden of proof under AEDPA to set aside these findings, and the findings are dispositive of his argument here that appellate counsel failed to notify him that his conviction had been affirmed for purposes of limitations. Regardless, an appellate counsel's failure to notify a defendant that his conviction had been affirmed on appeal is not unconstitutional "state action" for purposes of 28 U.S.C. § 2244(d)(1)(B).

Petitioner further asserts entitlement to equitable tolling, based on his alleged exercise of due diligence in pursuing his legal interests.  In support, he contends that the intermediate state appellate courts are "slow," and that "it would not be uncommon for an appeal to take up to two or three years to be decided after briefing was completed." (Docket Entry No. 13, pp. 2–3.) Petitioner argues that, given these "known" delays, he waited an appropriate time to contact the appellate court for a status update on his direct appeal.

It is well established that in rare and exceptional circumstances AEDPA's one year statute of limitations can be equitably tolled.  *Holland v. Florida*, 560 U.S. 631, 649 (2010); *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998).  "Equity is not intended for those who sleep on their rights," and thus to establish entitlement to equitable tolling, a petitioner must show that he has been pursuing his rights diligently, and that some extraordinary

circumstance stood in his way and prevented timely filing. *Holland*, 560 U.S. at 649. The required diligence is "reasonable diligence," not "maximum feasible diligence." *Id.*, at 648; *Manning v. Epps*, 688 F.3d 177, 183 (5th Cir. 2012). Generally speaking, equitable tolling is warranted only in situations where the petitioner is actively misled by the respondent or is prevented in some extraordinary way from asserting his rights. *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002). Consequently, neither excusable neglect nor ignorance of the law is sufficient to justify equitable tolling. *Fierro v. Cockrell*, 294 F.3d 674, 682 (5th Cir. 2002). *See Moore v. Cockrell*, 313 F.3d 880 (5th Cir. 2002) (finding counsel's delay in notifying petitioner of the result of the direct appeal does not constitute a basis for equitable tolling); *Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir. 2002) ("[M]ere attorney error or neglect is not an extraordinary circumstance such that equitable tolling is justified."); *see also Felder v. Johnson*, 204 F.3d 168, 171–72 (5th Cir. 2000) (finding ignorance of the law, lack of knowledge of filing deadlines, a prisoner's *pro se* status, illiteracy, deafness, and lack of legal training do not support equitable tolling of the AEDPA statute of limitations). Neither petitioner nor the record show extraordinary circumstances for purposes of equitable tolling.

Moreover, petitioner does not demonstrate due diligence. Petitioner does not dispute that he knew his notice of appeal had been filed on October 28, 2009, and appears to acknowledge that he knew counsel had filed his appellate brief on June 1, 2010, although his source for that information is unclear. Public records for the Fourteenth Court of Appeals in Houston, Texas, show that, on March 5, 2012, the appellate court received a letter from

petitioner dated February 24, 2012, requesting information as to the status of his appeal. This is the only correspondence received directly from petitioner himself appearing on the appellate court's docket. That same day, the appellate court sent petitioner a copy of the opinion affirming his conviction. Petitioner does not allege that he made any attempts to communicate with appellate counsel as to the status of the appeal after the appellate brief had been filed, or that any one else made inquiries on his behalf as to the status of the appeal. Rather, petitioner attempts to excuse his lack of inquiry by arguing the courts of appeals are notoriously "slow" in processing appeals:

> When Petitioner had learned that his appellate brief had finally been filed he knew that the appellate process would be slow since his appeal was in a very busy appeals court in Houston. Both the First and Fourteenth Appeals Court are very busy appeals courts with large appeal dockets. As such it would not be uncommon for an appeal to take up to two to three years to be decided after briefing was completed.

(Docket Entry No. 13, p. 3.) Petitioner does not disclose any basis or source for this assumption, and makes no suggestion that counsel, the State, or the courts had in any way fostered his belief that his appeal might take up to three years to process.

The record shows that appellate counsel filed the notice of appeal on October 28, 2009, and the appellate brief on June 1, 2010. The appellate court issued its opinion affirming petitioner's conviction on November 18, 2010, approximately five months after appellant's brief was filed. Thus, the intermediate court of appeals completed petitioner's direct appeal in shortly over one year's time. The appellate court's docket shows that

petitioner personally made only one inquiry regarding the status of his appeal, which was a letter of inquiry he sent to the court of appeals in late February 2012. The court of appeals immediately responded and sent petitioner a copy of the opinion affirming his conviction. Petitioner filed an extension of time to file a PDR shortly thereafter, but it was denied by the Texas Court of Criminal Appeals on March 15, 2012.

Petitioner does not establish with probative evidence that he made any other inquiries into the status of his direct appeal, either to appellate counsel or to the state court, after the filing of his notice of appeal.  Nor does petitioner allege or show that counsel sent him any status updates or other information regarding the appeal at any point after the notice of appeal was filed.  Thus, the record does not show that petitioner made any inquiry into the status of his appeal after October 28, 2009, and before the end of February 2012.  Assuming counsel sent petitioner a copy of the appellate brief at the time of its filing on June 1, 2010, the record shows that petitioner still made no inquiry regarding the appeal until end of February, 2012. To the contrary, petitioner admits that he assumed, without showing any basis or support, that "the state would file a series of extensions to file the State's 'Appellee Brief.'" (Docket Entry No. 13, p. 9.)  Petitioner further admits that "[o]nce it got around 15 months and the Petitioner had not heard anything on his appeal," he sent a letter of inquiry to the appellate court.  *Id.*  The record does not show that, under the circumstances of this case, petitioner exercised due diligence regarding the status and progression of his direct appeal for purposes of equitable tolling.

9

Regardless, even assuming petitioner's claims were not barred by limitations, they are without merit, as shown below.

### *The Applicable Legal Standards*

*Habeas Review*

This petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  28 U.S.C. § 2254.  Under the AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court.  *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent.  *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply.

*Williams*, 529 U.S. at 409.  In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable.  *Id.* at 411.

The AEDPA affords deference to a state court's resolution of factual issues.  Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding.  *Miller–El v. Cockrell*, 537 U.S. 322, 343 (2003).  A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330–31.

*Summary Judgment*

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact.  *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

While summary judgment rules apply with equal force in a section 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing

11

habeas proceedings.  Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant.  Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, the state court's findings must be accepted as correct by the federal habeas court.  *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

### *Ineffective Assistance of Trial Counsel*

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel.  U.S. CONST. amend. VI.  A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance.  *Id*. at 687.  The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim.  *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 688.  In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor

of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

Petitioner contends that his attorney provided ineffective assistance of counsel in the following particulars.

### *Failure to Prepare for Trial or Investigate the Facts*

Petitioner contends that trial counsel failed to determine the correct weight and identity of the substance seized from his person in the case. In responding to this claim on collateral review, trial counsel submitted an affidavit in which she testified as follows:

13

I was appointed to represent [petitioner] in March of 2009.  Prior to my appointment, he had retained counsel.  While he was represented by retained counsel, an agreed order was signed allowing the seized substance to be weighed and tested by an independent laboratory.  I was provided the results of this testing when I was appointed.  It was clear from the testing results that the private lab (Expertox) had not weighed the substance but only taken a sample for testing to ascertain whether or not the substance was cocaine.  I was unable to determine why Expertox had not weighed the substance.  The client was now indigent (the reason for the appointment of counsel) therefore, I approached the court for funds to have Expertox (or another private lab) weigh the substance.  I did so at the client's request.  The judge was unwilling to approve the expenditure of funds for an expert because the initial testing by Expertox had altered the original weight of the substance.  I discussed the matter at length with [petitioner] after the judge's ruling.  The client had maintained to me, and to my investigator when preparing for trial, that he had not ever been in knowing possession of any substance of any weight.  He maintained that another person had put the substance on him without his knowledge.  This was the defense he wished to pursue at trial.  No defense expert was retained while I was counsel to weigh the substance.  I had no basis to argue to the court that the client was entitled to the funds to weigh the substance, given the client's position that he had never been in possession or seen the substance in question and the fact that the weight of the substance had been altered in the previous testing.  The testing by Expertox did establish that the substance was in fact cocaine as alleged by the State.

* * * *

No [there was no evidence that the substance weighed less than a gram].  Had there been I certainly would have gotten that evidence before the jury at trial.  I had no reason to believe the State withheld any evidence in the case.

*Ex parte Clark*, WR-24,404-07, pp.  43–44.

In denying relief on this claim, the trial court made the following relevant findings of fact on collateral review:

4.     The affidavit of [trial counsel] is credible.

14

5.    A private lab, Expertox, was hired to conduct independent testing in this case.

6.    Expertox found that the substance was cocaine, but did not weigh the substance.

7.    [Trial counsel] approached the judge to obtain funding to have Expertox weigh the substance, but was denied because the initial testing by Expertox had altered the weight of the substance.

8.    There is no evidence that the substance weighed less than a gram.

9.    There is no harm from not having the substance weighed by an independent lab.

*Id.*, pp. 47–48 (record citations omitted).   The trial court also made the following relevant

conclusions of law:

1.    The applicant fails to show that trial counsel's conduct fell below an objective standard of reasonableness and that, but for trial counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different.

2.    The applicant fails to overcome the strong presumption that trial counsel's challenged conduct was sound trial strategy.

3.    The totality of the representations afforded the applicant was sufficient to protect his right to reasonably effective assistance of counsel in the primary case.

*        *        *        *

6.    In all things, the applicant has failed to demonstrate that his conviction was improperly obtained.

*Id.*, pp. 48–49 (citations omitted).  The Texas Court of Criminal Appeals relied on these

findings and conclusions in denying habeas relief.  *Id.*, at cover.

15

Petitioner presents no probative evidence, and none appears in the record, establishing that the substance seized from his person at the time of his arrest was not cocaine or that it weighed less than one gram. To the contrary, the record clearly shows that the substance was cocaine and that it weighed no less than one gram.  At trial, the State's expert witness testified that the substance contained cocaine and weighed 1.6 grams.  3 R.R., pp. 12-13, 15. Moreover, the independent lab analysis undertaken at petitioner's request and expense detected cocaine in the substance.  (Docket Entry No. 9-29, p. 30.)  Although petitioner contends that the independent lab analysis determined that the substance weighed less than one gram, he misconstrues the lab report.  The report reflects that the lab was provided a sample of the substance for testing purposes, and that the sample weighed less than one gram. *Id.*  In authorizing the independent lab analysis, the trial court ordered that the Houston Police Department provide the independent lab with no more than three milliliters of the substance for testing purposes.  *Id*., p. 31.  Contrary to petitioner's argument, the lab analysis report did not determine that the total weight of the substance seized from petitioner at his arrest was less than one gram.   Accordingly, petitioner establishes neither deficient performance nor actual prejudice for purposes of *Strickland*.

The state court denied relief on this claim.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

16

*Failure to Hire a Defense Expert*

Petitioner also claims that trial counsel was ineffective in failing to retain a defense expert to show that the substance weighed less than one gram.  As noted above, petitioner's independent lab did not perform a weight analysis of the total substance seized from petitioner's person at the time of his arrest, although it had been authorized to do so by the trial court.  The record further shows that the trial court denied petitioner's subsequent request for post-testing funds to undertake an independent weighing of the substance, because the weight of the sample provided to Expertox for testing was unknown.  The weight of the remaining substance in possession of the Houston Police Department crime lab would be irrelevant without knowledge of the sample's weight, as the weight of the substance originally seized from petitioner could no longer be calculated.  Petitioner establishes neither deficient performance nor actual prejudice under these circumstances.

The state court denied relief on this claim.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

### Ineffective Assistance of Appellate Counsel

Persons convicted of a crime are entitled to effective assistance of counsel on direct appeal.  *Evitts v. Lucey*, 469 U.S. 387 (1985).  This Court reviews counsel's appellate performance under the *Strickland* standards.  *See Goodwin v. Johnson*, 132 F.3d 162, 170

(5th Cir. 1998).  Petitioner must allege and present facts showing that his appellate counsel's representation was deficient and that the deficient performance caused him prejudice.  That is, petitioner must show that, but for appellate counsel's deficient performance, the outcome of the appeal would have been different.  *See Strickland*, 466 U.S. at 687–88, 692; *Jones v. Jones*, 163 F.3d 285, 300 (5th Cir. 1998).  Effective assistance of appellate counsel does not mean that counsel will raise every available non-frivolous ground for appeal.  *Evitts*, 469 U.S. at 394.  Nor will counsel be deficient for failing to press a frivolous point.  Rather, it means, as it does at trial, that counsel performs in a reasonably effective manner.  *Evitts*, 469 U.S. at 394.  A reasonable attorney has an obligation to research relevant facts and law and make informed decisions as to whether avenues will, or will not, prove fruitful.  *Strickland*, 466 U.S. at 690–91.

Petitioner claims in the instant case that appellate counsel was ineffective in failing to raise appropriate grounds of error on appeal, and in failing to advise him of his right to file a *pro se* petition for discretionary review.  Specifically, petitioner argues that appellate counsel should have challenged the sufficiency of the evidence as to the weight of the substance, based on the independent lab analysis report.

In rejecting these claims on collateral review, the trial court made the following relevant finding of fact:

11.    There is no evidence in the record regarding a lower weight of the substance on which appellate counsel could base a ground for relief.

*Ex parte Clark*, WR-24,404-07, p. 48.  The trial court further made the following relevant conclusions of law:

>    4.    Appellate counsel does not have to raise every claim on appeal; only when ignored issues are stronger than those presented will the presumption of effective assistance of counsel be overcome.
>
>    5.    The applicant has failed to overcome the presumption that appellate counsel's conduct was sound trial strategy.

*Id*., p. 49 (citation omitted).  The Texas Court of Criminal Appeals relied on these findings and conclusions in denying habeas relief.  *Id*., at cover.

This Court has already addressed petitioner's misconceptions regarding the independent lab analysis report.  As previously stated, the lab report does not reflect a determination that the substance seized from petitioner's person at the time of his arrest weighed less than a gram.  The lab report shows only that the weight of the *sample* of the substance provided to the lab by the Houston Police Department weighed less than one gram. Petitioner directs this Court to no other evidence in the record establishing a lesser weight, and the Court finds none.  Petitioner fails to show that, but for appellate counsel's failure to challenge the weight of the substance, there is a reasonable probability that the result of the appeal would have been different.  Neither deficient performance nor actual prejudice under *Strickland* are shown.

The state court denied relief on this claim.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland*

19

or was an unreasonable determination of the facts based on the evidence in the record.

Respondent is entitled to summary judgment dismissal of this claim.

Petitioner also claims that appellate counsel failed to inform him of his right to pursue a *pro se* petition for discretionary review.  This claim was resolved against petitioner in his first application for state habeas relief, wherein the trial court found as follows:

> 9.  According to the credible affidavit of [appellate counsel], on November 22, 2010, counsel sent written notification to the applicant of the appellate court's decision affirming his conviction; that counsel would not be filing a PDR in the primary case; instructing the applicant about how to proceed if he wished to continue his appeal; and informed the applicant of the deadlines involved.
>
> 10.  According to the credible affidavit of [appellate counsel], counsel's written notification to the applicant on November 22, 2010, included a motion for an extension of time to file a PDR.
>
> 11.  According to the credible affidavit of [appellate counsel], the applicant never informed counsel that he wished to proceed with a *pro se* PDR, and counsel has never heard from the applicant concerning the outcome of his appeal.
>
> 12.  The applicant fails to demonstrate that counsel failed to notify him that his conviction in the primary case had been affirmed and that he was entitled to file a *pro se* PDR.
>
> 13.  The representation received by the applicant on direct appeal was sufficient to protect his right to reasonably effective assistance of counsel.

*Id*., WR-24,404-07, pp. 37–38 (citations omitted).   The Texas Court of Criminal Appeals relied on these findings and conclusions in denying habeas relief.  *Id.*, at cover.

20

Petitioner presents no probative evidence establishing that counsel failed to notify him of the result of his appeal or of his right to pursue a *pro se* petition for discretionary review. Petitioner's allegation that he did not receive the correspondence sent to him by counsel on November 22, 2010, does not constitute proof that counsel failed to send the notification. Nor does he establish with probative summary judgment evidence that any failure to receive counsel's notification was counsel's fault. Petitioner fails to demonstrate deficient performance under *Strickland*.

The state court denied relief on this claim. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

### *Prosecutorial Misconduct*

Petitioner claims that the State committed prosecutorial misconduct in "failing to admonish the count [*sic*] of the true weight of the alleged substance." (Docket Entry No. 2, p. 4.) The State's expert witness testified at trial that the substance found on petitioner's person at the time of his arrest contained cocaine and weighed 1.6 grams. 3 R.R., pp. 12–13, 15. According to petitioner, however, the true weight of the substance was less than a gram, which would have significantly reduced his range of sentencing.

In rejecting petitioner's claim on collateral review, the trial court found that, "There is no evidence that the substance weighed less than a gram," and concluded that, "There is

no evidence of prosecutorial misconduct in this case." *Ex parte Clark*, WR-24,404-07, pp. 48–49 (citations omitted).

In support of his claim, petitioner again directs the Court to the Expertox lab report, which shows that Expertox tested a "[c]hunk substance received from HPD Crime Lab" weighing "< 0.1g," meaning that the specimen received by Expertox for testing weighed less than one gram.  (Docket Entry No. 9-29, p. 30.)  This does not establish that the substance seized from petitioner upon his arrest weighed less than one gram; rather, it shows that the specimen sample sent to Expertox by the HPD crime lab weighed less than one gram.  This is consistent with the trial court's order granting petitioner's request for independent lab testing of the substance, which specified as follows:

> It is ordered [that] the Houston Police Department Crime Lab comply with this order by allowing a qualified employee of EXPERTOX to photograph and weigh the alleged drug pertaining to this cause.  EXPERTOX shall be allowed to evaluate for total weight *along with being allowed to take no more than 3 milliliters of the evidence back to their lab* for the purpose of independently testing said evidence.

*Id*., p. 31 (emphasis added).  Petitioner's assumption that "< 0.1g" was the total weight of the substance seized from him at his arrest, rather than the amount provided to Expertox for testing purposes, is unsupported in, and refuted by, the record. The lab result clearly shows that a "Verification Test" was undertaken on a "< 0.1g Chunk substance received from HPD Crime Lab," and that the verification test result showed detection of cocaine.  *Id*., p. 30. Nowhere on the lab results does Expertox state that it undertook a total weight analysis of

the substance seized from petitioner, nor does it report that the total weight of the substance seized from petitioner was less than one gram.

The state court rejected petitioner's claim. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law, or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

### Conclusion

Respondent's motion for summary judgment (Docket Entry No. 12) is GRANTED and this lawsuit is DISMISSED WITH PREJUDICE. A certificate of appealability is DENIED. Any and all pending motions are DENIED AS MOOT.

Signed at Houston, Texas on May 23, 2014.

_____
Gray H. Miller
United States District Judge